The United States Court of Appeals for the Federal Circuit is now open and in session. God save the United States and this honorable court. Good morning, everyone. The first argued case this morning is No. 20-1144, Intex Recreation Corporation v. Team Worldwide Corporation. Mr. Carter, proceed. Good morning, Your Honors. May it please the court. This case should be remanded for several reasons. For ground three, the term inflatable body should not be limited to a no air leakage or air retention requirement. There is no lexicography, disavow, or disclaimer for no air leakage. And in fact, prosecution history for the Patton family shows that TWW represented to the public that continuously leaking airbeds are inflatable bodies. We ask that the claim construction be corrected to make clear that inflatable body does not have a no air leakage requirement and that this ground be remanded for the PTAB to apply the correct claim construction. Mr. Carter, this is Judge Stoll. I wanted to direct your attention to the prosecution history at page A2574-2575. And I look there and I see that at least three times the Patton owner made clear that in this case, the term inflatable body refers to a substantially airtight structure that expands or swells with filled with air or other gas. And even says, stated differently, the structure of an inflatable body must be substantially airtight. How do you get around that? Why is that not a particular lexicography or disclaimer or clear and unambiguous explanation of how the Patton owner understood that term to be? Yes, thank you, Judge Stoll. Our issue is not with the term substantially airtight. Our issue is that substantially airtight has now turned into no air leakage or stated another way that the bed has to retain air. And it's for the air leakage or air retention requirement for which there is no disavowal, disclaimer, or lexicography. Mr. Carter, why do you think the board interpreted substantially airtight to mean no air leakage at all? I didn't see that in their opinion. I saw instead that they looked at whether the prior art was substantially airtight. It's based on the arguments that were made by counsel relating to air leakage and air retention leading to that claim construction. I'm not reviewing the arguments made by opposing counsel for the board. I'm reviewing the board's actual opinion. And so, I'm looking to see what that says and whether the board made an error below. So, what do you point to in the board's actual opinion that shows error? It's how they, when they applied the claim construction to the Chan reference. So, it's at the top of Appendix 29 carrying or at the bottom of Appendix 29 carrying on to 30. The panel said, critically, the purpose of Chan is to allow air to, in italics, continuously escape, in italics, pillow, to form an air cushion on which toy two rides. So, they were focused on whether air was allowed to continuously escape when they made their finding on Chan. And we believe that that issue of continuously escaping air is a matter of claim construction. That is, they found that substantially airtight has a no air leakage requirement or said another way, an air retention requirement. Can I ask you, like, if you read on further, you gave us part of that sentence on page 830, but not the full sentence. And it says, continuously escape, dot, dot, dot, dot, dot, such that pillow 10 is not substantially airtight. They're looking at the word substantially airtight and comparing that to the accused, I mean, not the, not the, comparing that to the prior art. Which we review for substantial evidence. Is that, but you can, why do you contend that's a claim construction issue? Contend it's a claim construction issue because they are looking, when they're, when they're applying substantially airtight, they are looking at whether continuously escaping air can result in a substantially airtight inflatable body. And we know from other prosecution history that we have submitted in this case involving the Higgs and Wartman references. Those are airbeds used in a hospital setting that have continuously escaping air. The kind that you would see with patients so that you can treat bed sores. That with the continuously escaping air, TWW said that those are inflatable bodies. Is that prosecution history from the patent in this case? No, it is from a related patent, directly related using the exact same specification. What do you think is the difference between claim construction and the factual step of applying that claim construction to the prior earners? Well, in the claim construction, you are looking at the intrinsic evidence and what it is that a term means. And here we believe that this issue of continuously escaping air is part of the claim construction analysis that should be decided as a matter of law when this claim term is applied. Now, as far as also what is leading us that this is a matter of claim construction, that what it is that the court did in its definition led to a no air leakage or an air retention requirement, you can see in the red brief from Team Worldwide, they refer to air leakage as part of what it is they see as the definition for substantially airtight. And on page 34 of their brief, they refer to it with the air retention. They say a body that receives... I'm sorry. I just wanted to ask you one other thing. I just want to make sure I understand your position. Your position is that I should be determining that the word substantially airtight cannot as a matter of law include or can include as a matter of law something where air continuously escapes. That I'm supposed to determine that as a matter of law as opposed to a matter of fact that we defer to the agency. That is correct. Based on the intrinsic evidence in the Higgs and Wartman references, in the related application that has the exact same specification, and the fact you can look on pages 25 and 34 of TWW's brief, that they are reading that in as part of this construction. Then I will also add that there was a recent claim construction ruling in the Eastern District of Texas on the same patent where Judge Payne decided that as part of claim construction, that there is an air retention or no air leakage requirement. So this issue of no air leakage and air retention, we believe, is a matter of claim construction that needs to be decided before the factual comparison. Just to make sure, Mr. Carter, I want to make sure I understand the record correctly. Now, my understanding is that the district court construed this claim term exactly the same way as the board did here. Is that right? So the claim construction I'm referring to is a claim construction opinion. The substantially airtight construction is the same in the district court as it was by the board, correct? In the district court opinion that existed before this IPR was filed, that is correct. But to point out why we believe this is a claim construction issue, this substantially airtight issue was raised in another case involving the same patent, the 018 patent. And as a matter of claim construction in that case, Judge Payne found a no air leakage, air retention requirement. Where do you think, and this is your, you're on page A24. That is your best site that you can give me for your understanding that the PTAB did that in this case. The PTAB, A24. You told me, I asked you to tell me where it is you think that the board actually construed the term to require no air leakage at all. You identified page A24. I'm sorry for the confusion. I identified pages 25 and 34 of the red brief for places where TWW. I don't care where TWW does it. I told you before, I'm interested in knowing where you think the board aired. Yes, and that is appendix 29 to 30, where it is that you see that when they are analyzing Chan, that they in italics are talking about the continuously escaping air. And I acknowledge that they made that comment as part of their analysis of Chan in applying substantially airtight. But we believe that this issue of continuously escaping air needs to be addressed as a matter of claim construction when you look at all of the intrinsic evidence. Okay. Thank you. Okay. Anything else for Mr. Carter at the moment, or shall we hear from the other side? I was hoping to hear a little bit of argument on the motivation to combine grounds. Okay. Proceed. For the Perrini-Goldsmith combination ground five, we believe there are several bases for remand. And I have three minutes, so I'm going to make this just very brief. We believe the PTAP committed legal error by applying an improperly overly stringent obviousness test. The modification was a simple change and simple technology that provided a clear benefit of eliminating a jagged edge between the pump and the solar panel. And the jagged edge is where a person would lie down. We believe that the PTAP panel – This is Judge Stoll again. I'm sorry. Wasn't there expert testimony in this case that the board heard with the expert opine that there was, in fact, no jagged edge? But that is directly contradicted by Perrini itself. Perrini in figures four and five clearly shows a jagged edge. Does it say it has a jagged edge? It doesn't say it has a jagged edge, but it clearly shows that. So the reference itself is very clear that there is a jagged edge. And, in fact, the PTAP panel acknowledged on Appendix 41 that the modification would have a more even surface without as large of a bulge. We believe the PTAP panel ignored inconsistent decisions on related technology, IPR, final written decisions that we cited. On Appendix A41, I'm sorry to take your time with this, but would you please tell me what sentence you're relying on there? About halfway down, on the right-hand side, there's a sentence that starts with respect to. It says, with respect to spatial efficiency, although the proposed modification would have created a more even surface without as large of a bulge at the pump. It is that sentence. Okay. We believe that the PTAP panel ignored inconsistent decisions that they had made, which is. Do you think that. I'm sorry, go ahead. Do you think that the board of property followed KSR in finding the claims non-obvious? We do not, and that's why we cite the Corning case, the Randall manufacturing case, Uber Tech case, polygroup cases. We believe that here, where there is no dispute at this point that the prior combination discloses all the elements, obviousness just boils down to whether a POSA would have been led to make this combination with a reasonable expectation of success. And we believe that this is clearly a case where a person of skill in the art, looking at Figures 4 and 5 of Periani, would have wanted to eliminate that jagged edge or bulge to have an even surface across the top of the pump and the solar panels, and that simple change provided a clear benefit. Mr. Carter, this is Judge Stoll again. So I want to ask you a quick question, which is the way I was looking at this case is that you have contrary expert testimony. Well, let me back up. You've got the petition saying that it would have been obvious to make the modification for two reasons, one being spatial efficiency and the other one being durability. But there's expert testimony on both of those reasons going both ways. One expert saying it would have been obvious and another expert saying, no, there's no reason to do that. In fact, it would result in other issues or other problems. In other words, there's expert testimony on these two factual issues. Isn't the Board limited to just looking at the reasons to combine provided in the petition? That's my first question. And my second question is, why isn't the Board entitled to rely on the expert testimony here, the expert testimony of the patent owner? Thank you. Well, they are entitled to rely on the expert testimony. I think the main issue that we see is the PTAP panel did not rely on that testimony. They ignored statements regarding CHAPI, which is used for simultaneous invention. They ignored the 018 patent itself and what it is that that discloses, the benefit of just partially recessing the silence on Figure 15 that shows two pumps, yet there's no durability concern. Ignoring patent owner's testimony from its expert that durability is not an issue, that is it's very easy to find in a textbook glues and other adhesives to have an airtight connection. So we think that there is a lot of evidence that was not considered and not analyzed and that when that evidence was analyzed, they clearly provided too stringent of a standard. I'm over time, but I would also just want to point out one other issue, and that is failure to consider the secondary evidence of secondary considerations regarding CHAPI as simultaneous invention. Here the PTAP found that CHAPI corresponds to the subject matter of the challenge claims at Appendix 52 to 53, and in final written decisions on the exact same technology, the panel found CHAPI had a built-in recessed pump and used CHAPI as an anticipatory reference for that reason and also as an obviousness reference for providing motivation to build in recess. But despite those findings, they laid out a unknown that we were supposed to consider this in light of all the circumstances without setting forth what those circumstances are or any analysis regarding those circumstances. There's no dispute, CHAPI's simultaneous, it's developed independent, and the CHAPI reads on Claim 1. And to the extent that it is other issues that you would normally see in a secondary consideration analysis, Petitioner did have another expert that handled the other secondary considerations analysis of commercial success, et cetera, that weren't considered at all. So on the secondary considerations simultaneous invention front, the panel, despite acknowledging the importance of CHAPI and its high relevance, did not do anything to analyze or give any credit for CHAPI as simultaneous invention. And with that, I thank you for letting me exceed my time. Thank you. Let's hear from the other side, and we'll save you some rebuttal time. Okay, let's hear from Mr. Harkin. Thank you, Your Honor. I realized just as you were saying that I was still on mute. Okay. I'll proceed, thank you. Proceed. May it please the Court, Robert Harkin here for Team Worldwide Corporation. There were two issues that we heard about just now. One is claim construction of inflatable body, and the other is the Perianti plus Goldsmith combination and motivations. What's important, I think, on the claim construction, I think that what was said is correct. We have cited plentiful law about disclaimer, disavow, and lexicography, including calling something a definition and using IE. All of that exists here. In the prosecution history at Appendix 2574 through 2580, it comes up more than five times, actually, with things like inflatable body must be substantially airtight at 2575. Inflatable body, IE, a body that is substantially airtight at 2574. The claim term inflatable body refers to a substantially airtight structure also at 2574. Saying that it is airtight and then saying this definition at 2575, these are all the kind of consistent and repeated statements in all the law that we cited in our brief would constitute that. The other thing that's important to know is that Mr. Carter has not provided, it seems like there's a shift now. In the board's proceeding, there was a dispute over claim construction and whether or not substantially airtight was the right construction. Today, Mr. Carter says, we don't necessarily have a problem with substantially airtight. He doesn't point to what the construction is that they sought, that the board refused to give them. And the board applied, so as far as we can tell, for the claim construction part of this, the board applied exactly the right definition in finding substantially airtight. And I didn't hear a dispute about that. The board then turned to the prior art and said, well, you have to apply the facts here. Chan is supposed to, the whole point of the air in Chan is to blow air out of the product, create a hovercraft effect. That is not at all substantially airtight. That is the opposite. Like the entire point of Chan is not to retain air at all, but rather to emit air. And therefore, this ground has no basis when you apply the right claim construction. And that's what happened here. Counselor, could you go to the issue of the board's finding that a pump body holding or partially recessed into the inflatable body would have been non-obvious at the time of the invention? Okay. So, yes. So that's really, we don't see that as being the claim construction issue, but I'd be glad to move to that, no problem. That would be for the Perrienti plus Goldsmith ground. And I do want to reserve a little bit of time to talk about this 814 argument if I have the opportunity. But what I'll say about wholly or partially is there is no dispute that when you assert in a petition to the patent trial appeal board that there is a combination that the board is supposed to assess whether there would be a motivation to do the modified design that you talk about in the petition. And you have to use that combination. Perrienti, there is no dispute, and Intex says it in its briefing, that what it was seeking to do is to partially recess the pump in Perrienti. There was no version of the modified design that had anything to do with a wholly recessed design. Perrienti, and even at the reply brief that they filed at page 13, they do not talk about that. They agree that they're still seeking only a partially recessed design. The board noted and did not ignore the background art that it reviewed. It did look at it. It actually talked about in detail about some of the background art at pages 47 through 49. But it did note at page 44, note 25, that the discussion of wholly recessed pumps was a little bit off to the side in that that wasn't the design that was being discussed in the petition and not what was being sought as the modified design. That the only modification that was being argued in Perrienti was a partially recessed design. And so, therefore, they would have to look at the motivations, including art that was wholly recessed pumps, but look at the motivation and say, would that motivate somebody to make the modification to Perrienti as a partially recessed design as asserted by, in this case, Intex? And they concluded, based on all the expert testimony back and forth, that they wouldn't. And, in fact, it's important because at that point you're talking about a-they did not do a pre-KSR analysis here. They did not follow a rigid approach. What they did is they actually looked at the holistic-they followed a holistic approach. And they actually said so in their opinion at page 50 where they say, weighing all the submitted evidence and considering the party's arguments, considering the entirety of the record, including both advantages and disadvantages of the proposed modification, that they concluded that they were not persuaded by petitioner's evidence. And so there was a lot of expert testimony in this case. And what they found was the wholly recessed design did not provide appropriate motivation to do the partially recessed design modification that petitioner proposed for Perrienti. I find that-I find the argument intriguing. I mean, we're dealing with a technology here that's simple. And the claim language is broad. It requires wholly or partially recessed. And it seems to me that Intex was arguing that a partially recessed pump-they did make that argument. And it just seems to me that in view of the art that's discussed in this case that it takes only a very small modification to meet the claim language. So, thank you, Your Honor. So, I-you know, we would respectfully disagree with that. The modification that would be done in Perrienti is there is a pump in a solar panel that is-that Perrienti talks about an advantage of actually having a detachable. And that-and you have to look at what would be your motivation to take this pump that sits on the top of an airbed where you can remove it from the airbed so that when someone lies on it, there's not a hard piece of plastic there. There's a pipe with a valve in Perrienti. And, you know, there was expert testimony on that point. And on the point of it actually-there being a lot of disadvantages to trying to do any kind of a recess to the Perrienti design. And that was the only art of record. So, you actually have to weigh what would be the overall motivation of a person of ordinary skill in the art to Perrienti. And there were appendix sites at 4240-54 and 7940-56 cited in our brief on TWW's brief that-where there's extensive discussion of the experts about why you wouldn't combine these. You would not recess a pump in a Perrienti. That if you look at the teaching of Perrienti, what it's trying to do, that it's much better to have an external pump. And it actually doesn't give you spatial efficiencies, but it does give you durability problems. And it makes the product less usable to do that. And so, you would actually be motivated against that. So, the other thing is that what the actual combination was, was to combine it with Goldsmith. And there was plenty of expert testimony that Goldsmith was very different, that there was no attempt to be-to obtain these efficiencies. What they were trying to do is, in Goldsmith, use a traditional spring mattress to blow air, to cool or heat the user. It had nothing to do with an inflatable product at all. And it wasn't-and the board found it was really all the way into the bed. It's sitting on top of a wooden block. This is an asbestos-based design. And they couldn't see how you would look at that and ultimately conclude that you get advantages that outweigh the disadvantages that they saw in the record. And that's the evidence that they weighed. And when they did weigh that evidence and they looked at the expert, in that respect, they are entitled to deference. We cite the Yorkey v. Diab case, that those findings concerning credibility of witnesses and their analysis is considered deference. And the question becomes, really, could any reasonable mind accept the determination that they made? That is, as to those factual underpinnings. That's the class covert- How does the Chan reference fit into this? Chan is entirely different. They are argued on totally separate grounds. Chan is about inflatable body, and that was not combined with Perianti. And Perianti was combined with Goldsmith, that traditional spring bed for heating and cooling. The idea of Chan was a platform that would blow air out the bottom to make the platform hover so that you could put a toy on it and use it like a hovercraft. I'm not talking about Chan. I'm talking about Chen, C-H-E-N. Oh, Chen. Yes. So that design was entirely-that wasn't the combination that was asserted. But Chen- Go ahead. Excuse me, sir. Chen does talk about incorporating a pump into an air mattress. How does that not meet the limitation of partially- The reference to Chen is-there are other art combinations that were not asserted, where there were ways that you would incorporate-potentially wholly incorporate a pump into the air mattress. And in those instances, there wasn't-you would have to then perform a different motivation to combine analysis to determine whether that would be something you would do. The Chen reference that we're talking about, it does disclose incorporating a pump into an air mattress, correct? So Chen has-what it has-and so just to make it clear, Chen is not- Does it talk about- Which is required- Does Chen talk about- Yes. Sir, does Chen talk about incorporating a pump into an air mattress? Chen talks about having a pump all the way inside an air mattress that is a manual pump that you step on. It is not an electric pump design, but it is a pump that is inside of the air mattress. How does that not meet, then, the claim for wholly or partially claim? So Chen is-first, so the claim requires an electric pump, and it has its own considerations about whether you would do that. But Chen is a flexible, rubberized or plastic internal manual pump where you can just step onto the air mattress and it will squeeze air through an internal chamber. So yes, I understand that. Okay. But it does- Okay. We're talking about incorporating a pump into an air mattress. And what I'm asking you is, why is it that that reference would not meet the claim-the wholly or partially claim? Chen shows a wholly-like a wholly embedded pump inside of the air mattress that has a valve that leads to the outside. All right. That is correct. The issue becomes, does that kind of a manual pump that existed in the prior art, that doesn't have concerns about trying to weld hard plastic into the plastic of the body and the other-or introduce electricity or any of those concerns? Would Chen, if you did that, would it motivate you to take an external hard plastic pump with a solar panel attached and to cut a hole in the mattress and weld around the side of that pump that is incorporated with a large solar panel to partially embed it into Perrienti? And there was just-we would respectfully say that it has really no-you would not take a Chen and look at a Perrienti and decide you're going to start doing these more complicated designs when there are a lot of disadvantages to doing that. And the board also looked at all the evidence that was submitted to find that. I mean, in addition to that, this is not-the board is required to use the combination that's actually asserted in the claim, which is Perrienti plus Goldsmith, to make its finding. And so, I mean, that was the combination that the petitioner put forward. Were the board to hypothesize other combinations, that would be problematic. I think your opponent on the other side would say that-and he said this in response to a question that I asked him about KSR. He would say that your argument and what the board did here is that they failed to use the flexible approach as required under KSR. Understood, Your Honor. The board, I think, if you look at the whole of the 60-plus pages, more than 20 of which was the obviousness argument, they did not require the TSM standard to be applied. They actually looked, and I've read into the record, the pluses and minuses, the advantages and disadvantages on the whole, and concluded that weighing all of that evidence, that one would not be motivated. That is the KSR standard. I hear that I'm out of time, and I do want to give my colleague an opportunity to speak. If I might just have one moment to address the fact that this near-simultaneous invention point. Okay. I just want to say about that-thank you. I just want to say about that that, you know, Chafee was a ground that was dropped on the appeal. It is-we believe it is not near-simultaneous invention. We submitted a complete argument about that in our brief, and you can-while you can look as part of the grand factors at the totality of evidence to see if, on the whole, you have non-obviousness and weigh whether other people did that or not, it is not really an independent basis to find that something is obvious. It is actually not a built-in pump design, as we say, but, in fact, even if-it sort of doesn't matter, because you can't take art that comes later and use it for an argument about what happens earlier in time, and that is briefed fully in our brief. So, with that, unless there are further questions, I will turn it over to my colleague. Anything else for Mr. Harkins? All right. Ms. Silvkin, you have one minute. Thank you, Your Honor. May it please the Court, I am just here to answer any questions on the Appointments Clause issue, and it doesn't sound like it has been raised, but I'm happy to answer any questions the Court has. Okay. Now, if there's nothing that you need to tell us, I think that we understand the issue. Okay. Thank you. Thank you. Mr. Carter, do you have the last word, have about two minutes of rebuttal? Thank you, Your Honors. I want to first address the point on perienne and partially recessing, and the important part with perienne is that you look at the context of perienne. It would have been complete hindsight for someone to say, so that you still have a jagged edge because now the solar panel extends above the top of the mattress. So what it is that a person of skill in the art would be led to do would be to take the advantages of recessing, clearly taught in Goldsmith, clearly taught in Chen, as Judge Reyna pointed out, but also note we cited many other prior art references, Saputo at Appendix 2989, Hargan, Appendix 2881, Adams, Appendix 2953, Miller, Appendix 3009. All of these show that building a pump in was well known, shows that durability isn't an issue because all of these pumps were built into flexible products, and no one raised that as a concern, just as it wasn't raised as a concern in the 018 patent. And then my friend also noted that perienne can't be removed. That is incorrect. He's referring to an alternative embodiment, and the PTAB has clearly addressed this issue in the related IPRs. When you look at Appendix 29567 and 29569 through 70, perienne has an embodiment that is glued on. It is permanent, and it is just a minor change that is well known to do based on Goldsmith and the state of the art and within the knowledge of a person of skill in the art shown in all of these other references showing built-in pumps. Okay. Thank you. We got you mid-sentence. Any more questions for Mr. Carter? All right. I think that we have the issues on both sides. Thanks to counsel. The case is taken under submission.